IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
: CHAPTER 13
JAMES A. CASEY, :
: CASE NO. 5-12-bk-04618 RNO
Debtor :

# OPINION

The Chapter 13 Debtor's Amended Plan proposed to strip down the amount of two secured claims on two pieces of real property, neither of which are the Debtor's principal residence. The Creditors objected, *inter alia*, maintaining that there is sufficient equity in the real properties to fully allow their secured claims. This Opinion determines the value of the Debtor's two pieces of real estate. It will facilitate determination of the extent of the secured status of the respective claims against the two real properties.

**I.     JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

**II.    FACTS AND PROCEDURAL HISTORY**

The Debtor, James A. Casey, ("Casey") filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code. Casey listed on Schedule A - Real Property, sixteen pieces of real estate which he owned at the time of the Chapter 13 filing.

Objections were sustained to the original Chapter 13 Plan and, on April 3, 2013, Casey's First Amended Plan was filed ("Plan").

Paragraph 2D of the Plan proposed to modify the secured claim of Deutsche Bank National Trust Company ("Deutsche Bank") to a modified principal balance of $150,000.00.

The Plan also proposed to modify the secured claim of The Bank of New York Mellon, as Successor, by its Attorney in Fact Ocwen Loan Servicing, LLC ("Ocwen"). Ocwen's principal balance is modified to $80,000.00.

Deutsche Bank and Ocwen are represented by the same law firm. Both Deutsche Bank and Ocwen objected to confirmation of the Plan, principally asserting that the value of the respective properties securing each of their claims did not allow for the strip off of any portion of their claims.

The parties submitted a twenty-five paragraph Stipulation and requested that the Court determine the value of two of Casey's real properties. The property securing Deutsche Bank's mortgage is known as 199, 201, and 203 South Main Street, Wilkes-Barre, Pennsylvania ("199 South Main"). The property securing Ocwen's mortgage is known as 205-207 South Main Street, Wilkes-Barre, Pennsylvania ("205 South Main").

The parties were unable to present live expert testimony concerning the valuations of 199 South Main and 205 South Main. Pursuant to the parties' Stipulation, written appraisals of both properties, prepared by appraisers for Casey and the secured creditors, have been submitted to the Court. The Stipulation having been filed, the appraisals submitted, and the parties' briefs filed in support of their respective positions, this matter is ripe for decision.

### III. DISCUSSION

#### A. Valuation of Real Properties

Federal Rule of Bankruptcy Procedure 3012 provides:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

2

Federal Rule of Bankruptcy Procedure 3012 may be utilized to seek valuation of a secured creditor's collateral. *In re Windfelder*, 82 B.R. 367, 369-370 (Bankr. E.D. Pa. 1988); *In re McElwee*, 449 B.R. 669, 670 (Bankr. M.D. Pa. 2011).

It has been noted that valuation of assets "is not an exact science and has inherent vagaries". *In re Brown*, 289 B.R. 235, 238 (Bankr. M.D. Fla. 2003) (internal citation omitted). Further, the court has wide latitude in determining value. A court is not bound by the values determined by appraisals but may form its own opinion as to the value of the subject property. *In re Richards*, 1999 WL 14680, *7 (Bankr. E.D. Pa. 1999).

In this case, the Plan indicates that Casey intends to retain both 199 South Main and 205 South Main. Because of Casey's intention to retain the subject properties, I find it is appropriate to determine the fair market values of 199 South Main and 205 South Main. I believe this approach is consistent with the "replacement value" approach adopted by the United States Supreme Court for valuing secured claims in a cramdown context. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148 (U.S. 1997). I also conclude that considering Casey's intended use of the subject properties, to determine the proper approach to valuation, finds support in the case law in this District. *In re Donato*, 253 B.R. 151, 155 (M.D. Pa. 2000); *In re McElwee*, 449 B.R. 669, 672 (Bankr. M.D. Pa. 2011).

Based upon the above I will proceed to determine the fair market value of each of the subject properties. Such value has been described as ". . . the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time". *In re Serda*, 395 B.R. 450, 453-454 (Bankr. E.D. Cal. 2008); *In re Strever*, 468 B.R. 776, 783, N.9 (Bankr. S.C. 2012).

B.  **Fair Market Valuation of 199 South Main**

Casey offered the appraisal report of Shea Appraisal Service concerning the valuation of 199 South Main. The appraisal report contains a market value opinion of $150,000.00 as of September 27, 2012 ("199 Shea Appraisal").

The 199 Shea Appraisal used three approaches to valuation of the subject property. Page four of the report states that the value indicated by the cost approach was $326,600.00. The value indicated by the market approach was $150,000.00. The value indicated by the income approach was $127,000.00. Since the valuation opinion is in the amount of $150,000.00, I conclude the 199 Shea Appraisal found that the market approach was the best approach in determining the fair market value of 199 South Main. I will, therefore, focus on the reported items in the 199 Shea Appraisal concerning the market approach to valuation.

The 199 Shea Appraisal includes exterior and interior photographs of the subject 199 South Main. The appraisal report also includes exterior photographs for three comparable sale properties. The comparable sale properties are all in the City of Wilkes-Barre. The comparable sale properties are: 126 South Main Street ("Comparable One"); 245-247 South Main Street ("Comparable Two"); and, 269 South Washington Street ("Comparable Three").

The 199 Shea Appraisal contains information concerning each of the comparable sales. It is reported that Comparable One sold on June 29, 2012, with a sales price of $75,000.00. I note that while Comparable One was built in 1920, the same year as the subject 199 South Main, Comparable One contains 7,000 square feet while the subject contains 19,200 square feet. Both Comparable One and the subject 199 South Main are reported as being in "fair" condition. Comparable One does include an on-site, three-car detached garage; parking for the subject 199

4

South Main is all on-street parking. Comparable One appears to have been an arm's length sale with conventional financing and no reported seller concessions.

Comparable Two was built in 1900 and contains 7,050 square feet and was sold on December 2, 2009 with a sale price of $140,000.00. Comparable Two is reported as having on-site parking for twelve cars which I find would give it a considerable advantage over the subject 199 South Main which is located in an area where on-street parking is limited. I also accord relatively little weight to this comparable sale because the date of the sale was more than three and one-half years ago. The sales market conditions are considerably different in July 2013, than they were in December 2009.

Comparable Three contains 16,846 square feet and, thus, is approximately twelve percent smaller than the subject 199 South Main. However, Comparable Three is reported as being in "average" condition which compares favorably to the subject which is rated as "fair". Comparable Three is reported as having an "on-site lot for cars" but there is no indication of the number of cars that can be accommodated. Again, the subject 199 South Main has no on-site parking. Comparable Three is reported as having sold on May 21, 2012, for a price of $81,000.00. It is reported that the sale closed with conventional financing and no reported seller concessions.

I note that each of the comparables contained in the 199 Shea Appraisal are located no more than two blocks from the subject property.

There is a Market Conditions Addendum to the Appraisal Report attached to the 199 Shea Appraisal. The Addendum indicates that foreclosure sales ("REO sales") are a factor in the subject market. The report indicates, "REO resales now compete directly with the subject's

5

market segment. A study of currently listed properties in this segment indicate that the trend is increasing."

Ocwen offered an appraisal report of the Ingram Real Estate Group concerning the valuation of 199 South Main. This appraisal report contains a market value opinion of $220,000.00 as of February 26, 2013 ("199 Ingram Appraisal").

The 199 Ingram Appraisal utilized two approaches to valuation of the subject property. Page nine of the report states that the value indicated by the sales comparison approach was $205,000.00. The value indicated by the income approach was $235,000.00. The $220,000.00 opinion of value is stated as a reconciled value; presumably, a reconciliation between the results obtained by the two approaches to valuation.

Page sixty of the 199 Ingram Appraisal reports "the subject is currently vacant and if sold today, would be able to be transferred in its fee simple estate". There is nothing in the record that suggests that tenants are in place nor an income rental stream is being received from 199 South Main. Therefore, I ascribe little weight to the valuation obtained using the income approach in the 199 Ingram Appraisal. Since I ascribe greater weight to the sales comparison approach, I will focus on the reported items in the 199 Ingram Appraisal concerning that approach to valuation.

The 199 Ingram Appraisal includes exterior and interior photographs of the subject 199 South Main. Exterior photographs were provided for four comparable sale properties. The comparable sale properties are all in the City of Wilkes-Barre. They are: 123 South Main Street ("Comparable One"); 269 South Washington Street ("Comparable Two"); 37 North River Street ("Comparable Three"); and, 136 South Franklin Street ("Comparable Four").

6

The 199 Ingram Appraisal reports that Comparable One sold on July 3, 2012, for a sales price of $75,000.00. It indicates that the building was built in 1920, the same year as the subject, and contains 7,000 square feet; thus, it is less than one-half the size of the subject 199 South Main. Comparable One is reported as being in "fair" condition. It is noted that, at the time of the sale, the property was "100% Vacant". It is reported that the sale closed with conventional financing and there are no reported seller concessions.

Comparable Two is estimated as having been built between 1920 to 1936. Comparable Two is reported as containing 16,846 square feet. Comparable Two appears to me to be the same property which was identified as Comparable Three in the 199 Shea Appraisal. However, the 199 Ingram Appraisal indicates a sale date of May 3, 2012, while the 199 Shea Appraisal indicates a sale date of May 21, 2012. In any event, both Appraisals report that the sale price was $81,000.00. The 199 Ingram Appraisal reports that Comparable Two sold with conventional financing and no seller concessions are reported. The property is reported as being in "average" condition. I note that the 199 Ingram Appraisal does not report whether any on-site parking is available for any of the comparables. The 199 Shea Appraisal reported that 269 South Washington Street has an "on-site lot for cars".

Comparable Three contains 9,100 square feet. Thus, this comparable is slightly less than one-half the square footage of the subject 199 South Main. It is reported that Comparable Three sold for $340,000.00 on February 4, 2010, with conventional financing and no seller concessions noted. Page fifty-five of the report indicates that the comparable property was purchased by a corporation and for the item "Days on Market", it indicates "Auction". I will accord relatively little weight to this comparable sale in that I find that it substantially differs from the subject 199

7

South Main. Comparable Three is located several blocks north of 199 South Main and is situate on North River Street, which fronts on the Susquehanna River. The surrounding properties and the immediate access to the River Common would enhance values on this portion of North River Street. I find that the 199 South Main property, which is immediately adjacent to the Max Rosenn U.S. Courthouse, is located in a more distressed neighborhood which would tend to reduce the value of the subject property. Also, I note that Comparable Three is zoned R-2 - Residential, Two Family, while the subject 199 South Main is zoned C-1 - Commercial, Office District. It is reported that Comparable Three was one hundred percent vacant and its condition was described as "average". However, again, due to its dissimilarities, I afford little weight to this comparable sale.

Comparable Four is reported as having sold on December 20, 2012, for a price of $175,000.00. This comparable is considerably smaller than the subject 199 South Main, containing only 4,800 square feet. However, as with Comparable Three, I find that there are substantial dissimilarities between Comparable Four and the subject property 199 South Main. Comparable Four is located on a block of South Franklin Street which is improved with several substantial properties - including the Westmoreland Club, the Osterhout Library, and buildings of Wilkes University. It is a mixed use block containing commercial, institutional, and residential uses. Comparable Four is zoned S-1 - Special Purpose; again, the subject property is zoned C-1 - Commercial, Office District. Also, it is reported that Comparable Four, at the time of the sale, was "100% Leased". I conclude that the fact that the property was one hundred percent tenanted would increase its attractiveness to an investor/purchaser. The report does indicate that Comparable Four was built "circa 1900", which would make it approximately

8

twenty years older than the subject 199 South Main. It is reported that the sale was a cash sale and no seller concessions are reported.

I underscore my concern that Comparables Three and Four are approximately four blocks and two blocks from the subject property, respectively. I take judicial notice that there can be a significant difference between the relative attractiveness of properties which are within one block of one another in the Wilkes-Barre Central Business District.

Generally, I was more persuaded by the approach to valuation and the comparable sales considered in the 199 Shea Appraisal. That report opines a $150,000.00 fair market value for 199 South Main as of September 27, 2012. I am tasked to decide the fair market value of the property as of the date of this Opinion. There have been certain positive changes in the real estate market since September 27, 2012. Based upon the record presented, I find that the fair market value of 199 South Main is $155,000.00.

### C. Fair Market Valuation of 205 South Main

Casey offered the appraisal report of Shea Appraisal Service concerning the valuation of 205 South Main. The appraisal report contains a market value opinion of $80,000.00 as of September 27, 2012 ("205 Shea Appraisal"). The 205 Shea Appraisal used three approaches to valuation of the subject property. Page four of the report states that the value indicated by the cost approach was $124,822.00. The value indicated by the market approach was $80,000.00. The value indicated by the income approach was $76,000.00. The valuation opinion is in the amount of $80,000.00, which is the value indicated by the market approach. As I did with respect to 199 South Main, I conclude that the 205 Shea Appraisal found that the market approach was the best approach in determining the fair market value of 205 South Main. I will,

9

Case 5:12-bk-04618-RNO    Doc 112    Filed 07/22/13    Entered 07/22/13 13:58:49    Desc
Main Document    Page 9 of 16

therefore, again focus on the reported items in the 205 Shea Appraisal concerning the market approach to valuation.

The 205 Shea Appraisal includes exterior and interior photographs of the subject 205 South Main. The report also includes exterior photographs for three comparable sale properties. The comparable sale properties are all located in the City of Wilkes-Barre. The comparable sale properties included in the report are: 123 South Main Street ("Comparable One"); 671-673 Hazle Street ("Comparable Two"); and, 245-247 South Main Street ("Comparable Three").

The 205 Shea Appraisal contains data concerning each of the comparable sales. It reports that Comparable One sold on June 29, 2012, with a sales price of $75,000.00. Comparable One was built in 1920, the same year as the subject 205 South Main. Comparable One contains 7,000 square feet while the subject contains 4,420 square feet, making it approximately thirty-five percent larger than the subject 205 South Main. Comparable One and the subject 205 South Main are reported as being in "fair" condition. Comparable One includes an on-site, three-car detached garage while the subject 205 South Main only has on-street parking. I note that Comparable One has baseboard electrical heat while the subject 205 South Main has "gas forced air". Comparable One appears to have been an arm's length sale with conventional financing and no reported seller concessions.

Comparable Two, also built in 1920, contains 4,931 square feet, making it slightly larger than the subject 205 South Main. Comparable Two has "on-site lot for 8 cars". I find that this gives Comparable Two a considerable advantage over the subject 205 South Main which is located in an area with limited on-street parking. However, I must accord relatively little weight to Comparable Two because the date of the sale, August 12, 2009, was more than three and one-

half years ago.  Comparable Two is reported as having sold then for $88,000.00.  The sales market conditions are considerably different in July 2013, than they were in August 2009.

Comparable Three contains 6,750 square feet and is, thus, approximately forty percent larger than the subject 205 South Main.  Comparable Three is reported as being in "average" condition compared to the subject 205 South Main which is reported as being in "fair" condition.  Comparable Three is also reported as having an on-site lot for twelve cars.  Comparable Three is reported as having sold on December 2, 2009, for a price of $140,000.00.  It is reported that the sale closed with conventional financing and no reported seller concessions.  I am again concerned about the fact that the sale of Comparable Three occurred more than three and one-half years ago – with considerable changes in the sales market conditions between then and July 2013.

Comparables One and Three in the 205 Shea Appraisal are within one block of the subject property.  Comparable Two is not on South Main Street and is approximately 1.30 miles from the subject 205 South Main.

There is a Market Conditions Addendum to the Appraisal Report attached to the 205 Shea Appraisal.  The Addendum indicates that foreclosure sales ("REO sales") are a factor in the subject market.  The report indicates "REO resales now compete directly with the subject's market segment.  A study of currently listed properties in this segment indicate that the trend is increasing".

Ocwen offered an appraisal report of the Ingram Real Estate Group concerning the valuation of 205 South Main.  This appraisal report contains a market value opinion of $115,000.00 as of February 26, 2013 ("205 Ingram Appraisal").

11

The 205 Ingram Appraisal utilized two approaches to valuation of the subject property. Page eight of the report states that the value indicated by the sales comparison approach was $105,000.00. Page nine indicates that the value indicated by the income approach was $120,000.00. The $115,000.00 opinion of value is stated as a reconciled value; again, presumably, a reconciliation between the results obtained by the two approaches to valuation.

Page seven of the 205 Ingram Appraisal reports:

> The 205 South Main Street space has been most recently used by the owner [Casey] as a thrift store. The adjacent commercial space at 207 South Main Street has most recently been occupied by the owner's [Casey's] daughter as a dog training center. The second floor is improved with four efficiency apartments with two apartments measuring 429 square feet and the other two measuring 473 square feet. None of these units are leased and have been vacant for at least a few years.

The record does not include data for third party rentals being paid for any portion of 205 South Main. Further, the second floor apartments are small sized (each less than 500 square feet) – and have been vacant for several years. Based on these factors, I will assign little weight to the valuation obtained using the income approach in the 205 Ingram Appraisal. I will assign greater weight to the sales comparison approach, and therefore, focus on the reported items in the 205 Ingram Appraisal concerning that approach to valuation.

The 205 Ingram Appraisal includes exterior and interior photographs of the subject 205 South Main. Exterior photographs were also provided for four comparable sale properties. The comparable sale properties are all in the City of Wilkes-Barre; they are: 123 South Main Street ("Comparable One"); 115 Bowman Street ("Comparable Two"), 105 North Grant Street ("Comparable Three"); and, 136 South Franklin Street ("Comparable Four"). It should be noted that Comparable One in the 205 Ingram Appraisal is the same property as Comparable One in

12

the 199 Ingram Appraisal. Similarly, 136 South Franklin Street is Comparable Four in both Ingram reports.

Again, Comparable One is reported as having been sold on July 3, 2012, for a sales price of $75,000.00. It indicates that the building was built in 1920, the same year as the subject 205 South Main, and contains 7,000 square feet. Comparable One is approximately thirty-five percent larger than the subject 205 South Main. Comparable One is reported as being in "fair" condition, while the subject is reported as being in "fair to average" condition. At the time of its sale, Comparable One was reported as being "100% vacant". It is reported that the sale closed with conventional financing and there are no reported seller concessions. Comparable One is zoned C-3 - Commercial Central while the subject 205 South Main is zoned C-1 - Commercial, Office District.

Comparable Two is estimated as having been built "circa 1920s". It is reported as containing only 1,832 square feet, making it less than one-half the size of the subject 205 South Main. Comparable Two is quite dissimilar in appearance to the subject 205 South Main. Comparable Two appears to have been constructed as a peaked roof dwelling unit. Page fifty-two of the 205 Ingram Appraisal reports that the property is a "former tavern (Brannigan's Pub) with upper level apartment, both reportedly vacant at the time of sale . . .". Comparable Two is located in an R-1 - Residential zone. Comparable Two is a freestanding structure with surrounding residential uses. The subject property is a flat roofed, commercial structure with little to no space between it and the adjoining commercial uses. The 205 Ingram Appraisal does not report whether any on-site parking is available for any of the comparable sales.

Comparable Three contains 3,700 square feet which is approximately fifteen percent

13

smaller than the subject 205 South Main. It is reported that Comparable Three sold for $165,000.00 on February 22, 2012. Comparable Three is a freestanding structure on a corner lot in a mixed use neighborhood. It is significant to me that the report indicates that the property was built in "1950s"; thus the structure is at least thirty years newer than the subject building. Comparable Three is located in an R-1 - Residential zone. Page fifty-three of the 205 Ingram Appraisal reports that the property contains "two commercial units of approximately 1,000 square foot each and two upper level apartments. First floor commercial space was vacant and the apartments were reportedly leased at the time of sale." It is reported that the sale closed with conventional financing and no reported seller concessions. I take judicial notice that Google Maps (https://maps.google.com/) reports that Comparable Three is 3.4 miles from the subject 205 South Main. I will accord relatively little weight to this comparable sale because of its dissimilarity and its distance from the subject.

Comparable Four is reported as having been sold on December 20, 2012, for a price of $175,000.00. It contains 4,800 square feet compared to the 4,420 square feet of the subject 205 South Main. I have the same concerns with the utilization of Comparable Four to determine the market value of 205 South Main as I did using the property to determine the market value of 199 South Main. That is, there are significant dissimilarities between Comparable Four and the subject property 205 South Main. As noted above, Comparable Four is located on a block of South Franklin Street which is improved with several substantial properties – including the Westmoreland Club, the Osterhout Library, and buildings of Wilkes University. Comparable Four is located in a mixed use block which contains commercial, institutional, and residential uses. Google Maps (https://maps.google.com/) reports that Comparable Four is .4 miles from the

14

subject 205 South Main. Comparable Four is zoned S-1 - Special Purpose; the subject property is zoned C-1 - Commercial, Office District. Also, Comparable Four is reported as having been one hundred percent leased at the time of sale. Again, this would make the property more attractive to an investor/purchaser as compared to the subject property whose only occupants appear to be Casey and his daughter. While Comparable Four is less than one-half mile from the subject 205 South Main, the desirability of the city blocks on which the two properties are located is markedly different. Comparable Four is reported as having been a cash sale with no reported seller concessions.

Page fifty-five of the 205 Ingram Appraisal includes a "Comparable Five". The comments indicate that "property was listed on the market in November 2012 for $157,900.00". If an appraiser attempted to testify concerning the listing figure for a property as evidence of fair market value, I would generally sustain a relevancy objection to such testimony. I conclude that, at least in this instance, considering what the owner is asking for his property would not assist me in determining the fair market value of 205 South Main. I give no weight whatsoever to such listing price.

I have noted significant concerns with the 205 Shea Appraisal and the 205 Ingram Appraisal. Two of the three comparable sales reported in the 205 Shea Appraisal are from 2009. Three of the four comparable sales utilized in the 205 Ingram Appraisal are substantially dissimilar from the subject in terms of construction or location. I am tasked to decide the fair market value of the property as of the date of this Opinion. Based upon the record presented, I find that the fair market value of 205 South Main is $90,000.00.

III.     CONCLUSION

The values that I have determined for 199 South Main and 205 South Main may be utilized to determine the extent to which the allowed claims of Deutsche Bank and Ocwen are secured by the properties. This, in turn, may be relevant to determine the requirements for confirmation of a Chapter 13 plan under 11 U.S.C. § 1325. An Order will be entered consistent with the foregoing Opinion.

By the Court,

Date: July 22, 2013

Robert N. Opel, II, Bankruptcy Judge

(BI)